T.C. Memo. 1998-9

UNITED STATES TAX COURT

ANTONIO T. CROTEAU, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 814-96.                          Filed January 12, 1998.

Antonio T. Croteau, pro se.

Joan S. Dennett, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  Respondent determined a deficiency of
$9,648 in, and an accuracy-related penalty of $1,930 on,
petitioner's Federal income tax for 1993.

The issues for decision are:

(1)  Are certain payments that petitioner Antonio T. Croteau
(Mr. Croteau) made during 1993 to or on behalf of Jeanne Anne

Marie Croteau (Ms. Croteau) deductible for that year as alimony or separate maintenance payments under section 215(a)?[1]  We hold that they are not.

(2)  Is petitioner liable for 1993 for the accuracy-related penalty under section 6662(a)?  We hold that he is.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner resided in Whitefish, Montana, at the time the petition was filed.

Petitioner married Ms. Croteau in May 1981.  They separated in November 1992.

On January 13, 1993, petitioner and Ms. Croteau executed a marital settlement agreement (agreement) which petitioner had prepared.  In preparing the agreement, petitioner used as a model a marital settlement agreement that had been entered into by his son and the former wife of his son.

On January 15, 1993, Mr. Croteau filed a petition in the Superior Court of California, county of Ventura, for dissolution of his marriage to Ms. Croteau (petition for dissolution of marriage).  The petition for dissolution of marriage was a preprinted form on which Mr. Croteau provided certain information requested by the form.  That preprinted form stated, inter alia:

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

"Petitioner requests confirmation as separate assets and obligations the items listed".  Mr. Croteau did not list any such items in the petition for dissolution of marriage.

The agreement was attached to and filed with the petition for dissolution of marriage.  The agreement provided in pertinent part as follows:

> I, Antonio Theodore Croteau husband and I, Jeanne Anne Marie Croteau wife agree as follows:
>
> I.   GENERALLY:  We are now husband and wife. * * *
>
>      *     *     *     *     *     *     *
>
>    C.   We now intend, by this agreement, to make a final and complete settlement of all our rights and obligations concerning division of property, and spousal support.
>
>      *     *     *     *     *     *     *
>
> III. SUPPORT PAYMENTS TO SPOUSE:  In consideration of the other terms of this agreement, and whereas both spouses are fully self-supporting, both parties waive all right or claim which they may now have to receive support or maintenance from the other.  No court shall have jurisdiction to award spousal support at any time regardless of any circumstances that may arise.
>
> IV.  DIVISION OF COMMUNITY PROPERTY AND DEBTS:  The parties warrant and declare under penalty of perjury that the assets and liabilities divided in this agreement constitute all their community and quasi-community assets and liabilities.  In the event that the division is unequal, the parties knowingly and intelligently waive an equal distribution of the community property.
>
>    A.   Husband is awarded and assigned the following assets as his share of the community property:
>
>      *     *     *     *     *     *     *
>
>    B.   Wife is awarded and assigned the following

assets as her share of the community property:

1. 1990 Chevrolet Pick Up, license no. 3Z23039.
2. 1986 Country Camper motorhome, license no. 2EAE391.
3. 1986 Suzuki Samurai, license no. 1SDJ835.
4. U-Save Trailer, license no. 1AH6844.
5. Log cabin on Highway 2 at McGregor Lake, Montana.
6. Household possessions including jewelry collection.
7. Husband shall forthwith remove his name from registration and registration shall be solely in wife's name.

C. Debts:

1. Husband Antonio Theodore Croteau agrees to deliver the aforementioned vehicles free and clear of any liens, he also shall make payments on the McGregor Lake cabin until it is fully paid for.

2. Husband agrees to maintain insurance on the aforementioned vehicles until January 1st, 1994.

        *    *    *    *    *    *    *

V. EQUALIZATION PAYMENT:

In the interest of fairness, and in consideration of the manner in which the property was divided, husband shall pay to wife the following sums as a division of the community property. Husband agrees to pay $1000.00 per month beginning on April 1st, 1993 and ending April 1st, 1995. He also shall pay wife $15,000.00 for moving expenses also due April 1st, 1993. Husband also agrees to pay health insurance for wife and any auto repairs or maintenance on the aforementioned vehicles or other necessities from January 1st, 1993 through December 31, 1993, not to exceed $10,000.00 total.

VI. RESERVATION OF JURISDICTION:

The parties agree that the court shall have jurisdiction to make whatever orders may be necessary or desir-

able to carry out this agreement and to divide equally between the parties any community assets or liabilities omitted from division under this agreement.

VII. ADVICE OF COUNSEL:

The parties recognize that the termination of the marriage, division of marital property, and payment agreement will be determined by this instrument. We recognize that we each have a right to seek advice from independent counsel of our own choosing and that we knowingly and with due regard for the importance of same have elected to proceed with this agreement.

      *     *     *     *     *     *     *

IX.   PRESENTATION TO COURT:

This agreement shall be presented to the court in any divorce proceeding between the parties, it shall be incorporated in the Judgement therein, the parties shall be ordered to comply with all its provisions, and all warranties and remedies provided in this agreement shall be preserved.

X.   DISCLOSURES:

Each party has made a full and honest disclosure to the other of all current finances and assets, and each enters into this agreement in reliance thereon. Each warrants to the other and declares under penalty of perjury that the assets and liabilities divided in this agreement constitute all of their community assets and liabilities.

XI.   BINDING EFFECT:

This agreement, and each provision thereof, is expressly made binding upon heirs, assigns, executors, administrators, representatives, and successors in interest of each party.

During 1993, petitioner made payments by check to or on behalf of Ms. Croteau that totaled $33,368. Of that total amount, $10,642 was paid pursuant to that portion of the agree-

ment entitled "DIVISION OF COMMUNITY PROPERTY AND DEBTS" and approximately $22,250 was paid pursuant to that portion of the agreement entitled "EQUALIZATION PAYMENT".

Petitioner filed a U.S. Individual Income Tax Return (return) for 1993, in which he claimed a deduction for alimony in the amount of $34,368.

In the notice of deficiency (notice) issued to petitioner with respect to his taxable year 1993, respondent determined that petitioner is not entitled to the alimony deduction that he claimed in his 1993 return and that he is liable for the accuracy-related penalty under section 6662(a).[2]

## OPINION

Petitioner has the burden of proving error in respondent's determinations. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

## Claimed Alimony Deduction

Section 215(a) allows an individual to deduct alimony or separate maintenance payments made by such individual during his or her taxable year. Section 215(b) defines the term "alimony or separate maintenance payment" to mean any alimony or separate maintenance payment as defined in section 71(b) that is

---

[2] Respondent's disallowance of the alimony deduction claimed by petitioner in his 1993 return resulted in an increase in petitioner's adjusted gross income. Consequently, respondent also made adjustments in the notice totaling $688 to the itemized deductions that petitioner claimed in his 1993 return.

includible in the gross income of the recipient under section 71.
Neither section 215 nor section 71 applies if the spouses file a
joint return. Sec. 71(e).

Section 71(b)(1) defines the term "alimony or separate main-
tenance payment" to mean any cash payment if--

> (A) such payment is received by (or on behalf of)
> a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not
> designate such payment as a payment which is not
> includible in gross income under this section and not
> allowable as a deduction under section 215,
>
> (C) in the case of an individual legally separated
> from his spouse under a decree of divorce or of sepa-
> rate maintenance, the payee spouse and the payor spouse
> are not members of the same household at the time such
> payment is made, and
>
> (D) there is no liability to make any such payment
> for any period after the death of the payee spouse and
> there is no liability to make any payment (in cash or
> property) as a substitute for such payments after the
> death of the payee spouse.

Petitioner contends that during 1993 he made payments
totaling $33,892[3] to or on behalf of Ms. Croteau, which consti-
tute alimony or separate maintenance payments as defined in
section 215(b). All but $1,000 of the total payments claimed by
petitioner were made by checks that are part of the record in
this case. Petitioner contends that he made the remaining $1,000
payment in cash. Except for his uncorroborated, self-serving

---

[3] Although petitioner claimed a total alimony deduction of
$34,368 in his 1993 return, he conceded at trial that he is not
entitled to $476 of that amount.

testimony on which we are unwilling to rely, there is no evidence in the record to support petitioner's claim as to that $1,000 payment. Consequently, in the event that the Court were to decide that petitioner is entitled to deduct under section 215(a) all or a portion of the payments that he made to or on behalf of Ms. Croteau during 1993, the maximum amount of such a deduction would be $32,892.

We shall now address whether petitioner has established that his liability to make the payments at issue terminated upon the death of Ms. Croteau because resolution of that question will be dispositive of the issue presented under section 215(a). The agreement is silent as to whether petitioner was liable to make the payments at issue after the death of Ms. Croteau. Consequently, we must look to the effect of State law on that question. See Hoover v. Commissioner, 102 F.3d 842, 846-847 (6th Cir. 1996), affg. T.C. Memo. 1995-183; Sampson v. Commissioner, 81 T.C. 614, 618 (1983), affd. without published opinion 829 F.2d 39 (6th Cir. 1987).

Cal. Civ. Code sec. 4801(b) (West 1983), repealed by 1992 Cal. Stat. 162, sec. 3 (effective Jan. 1, 1994), provides:

> (b) Effect of Death or Remarriage. Except as otherwise agreed by the parties in writing, the obligation of any party under any order or judgment for the support and maintenance of the other party shall terminate upon the death of either party or the remarriage of the other party.

If the payments at issue were for the support and maintenance of

Ms. Croteau within the meaning of Cal. Civ. Code sec. 4801(b), they would terminate at the death of Ms. Croteau, Cal. Civ. Code sec. 4801(b), and would comply with the definitional requirement for alimony or separate maintenance payments that is set forth in section 71(b)(1)(D). If the payments at issue were for the division of community property, they would not terminate at the death of Ms. Croteau, cf. <u>Lipka v. Lipka</u>, 386 P.2d 671, 674 (Cal. 1963); Cal. Civ. Code sec. 4801(b), and would not comply with that definitional requirement.

We find the terms of the agreement to be unequivocal in providing (1) that petitioner and Ms. Croteau waived all right or claim that they may have had to receive support or maintenance from the other[4] and (2) that all payments which petitioner was to make to or on behalf of Ms. Croteau were for the division of their community property.[5] On the instant record, we find that

---

[4] The agreement stated in pertinent part:

SUPPORT PAYMENTS TO SPOUSE. In consideration of the other terms of this agreement, and whereas both spouses are fully self-supporting, both parties waive all right or claim which they may now have to receive support or maintenance from the other. No court shall have jurisdiction to award spousal support at any time regardless of any circumstances that may arise.

[5] Indeed, petitioner conceded at trial that the payments at issue were made either under the portion of the agreement entitled "DIVISION OF COMMUNITY PROPERTY AND DEBTS" or the portion of the agreement entitled "EQUALIZATION PAYMENT". The portion of the agreement entitled "DIVISION OF COMMUNITY PROPERTY AND DEBTS" provided in pertinent part:

(continued...)

the payments at issue were not for the support and maintenance of Ms. Croteau within the meaning of Cal. Civ. Code sec. 4801(b), but were for the division of the community property of petitioner and Ms. Croteau.

Petitioner attempts to disavow the agreement. He claims that he and Ms. Croteau intended that the payments at issue were to be for the support of Ms. Croteau and that they did not intend that such payments were to be for the division of their community property. On the record before us, we shall not allow petitioner to disavow the agreement into which he and Ms. Croteau entered.[6]

---

[5](...continued)
   The parties warrant and declare under penalty of perjury
   that the assets and liabilities divided in this agreement
   constitute all their community and quasi-community assets
   and liabilities. In the event that the division is un-
   equal, the parties knowingly and intelligently waive an
   equal distribution of the community property.

The portion of the agreement entitled "EQUALIZATION PAYMENT" stated:

   In the interest of fairness, and in consideration of the
   manner in which the property was divided, husband shall pay
   to wife the following sums as a division of the community
   property. Husband agrees to pay $1000.00 per month begin-
   ning on April 1st, 1993 and ending on April 1st, 1995. He
   also shall pay wife $15,000.00 for moving expenses also due
   April 1st, 1993. Husband also agrees to pay health insur-
   ance for wife and any auto repairs or maintenance on the
   aforementioned vehicles or other necessities from January
   1st, 1993 through December 31, 1993, not to exceed
   $10,000.00 total.

[6] Under California law, the agreement is a contract which is governed by the same principles applicable to contracts gener- ally. See In re Marriage of Hasso, 280 Cal. Rptr. 919, 922 (Cal.
(continued...)

See <u>Palo Alto Town & Country Village, Inc. v. Commissioner</u>, 565 F.2d 1388, 1390 (9th Cir. 1977), remanding T.C. Memo. 1973-223; <u>Baxter v. Commissioner</u>, 433 F.2d 757, 759 (9th Cir. 1970), affg. T.C. Memo. 1969-87; <u>Meredith Corp. v. Commissioner</u>, 102 T.C. 406, 438 (1994).

Based on our examination of the entire record before us, we find (1)(a) that petitioner has failed to persuade us that the payments at issue were for the support and maintenance of Ms. Croteau within the meaning of Cal. Civ. Code sec. 4801(b) and (b) that, consequently, Cal. Civ. Code sec. 4801(b), which requires the obligation of a party under an order or judgment for the support and maintenance of the other party to terminate upon the death of either party, does not apply to those payments and (2) that petitioner has failed to establish that the payments at issue satisfy the definitional requirement for alimony or separate maintenance payments that is set forth in section 71(b)(1)(D). Accordingly, petitioner has failed to show that

[6](...continued)
App. 1st 1991). Under California contract law, extrinsic evidence concerning the facts and circumstances surrounding the execution of a property settlement agreement is not admissible to vary or alter that agreement if the terms of the contract are susceptible of only one reasonable interpretation. See Cal. Civ. Proc. Code sec. 1856 (West 1983); <u>In re Marriage of Iberti</u>, 64 Cal. Rptr. 2d 766, 768-769 (Cal. App. 2d 1997); see also Cal. Civ. Code sec. 1638 (West 1985). We conclude that the terms of the agreement are susceptible to only one reasonable interpretation. Consequently, we shall disregard the extrinsic evidence offered by petitioner concerning the alleged terms of the agreement, which conflict with the actual terms of the agreement.

those payments are alimony or separate maintenance payments within the meaning of section 215(b). Therefore, respondent's determination disallowing the alimony deduction claimed by petitioner for 1993 is sustained.

Section 6662(a)

Section 6662(a) imposes an addition to tax equal to 20 percent of the underpayment of tax attributable to, inter alia, negligence or disregard of rules or regulations under section 6662(b)(1). For purposes of section 6662(a), the term "negligence" includes any failure to make a reasonable attempt to comply with the Internal Revenue Code, and "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Negligence has also been defined as a lack of due care or failure to do what a reasonable person would do under the circumstances. Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), affg. T.C. Memo. 1991-179; Antonides v. Commissioner, 91 T.C. 686, 699 (1988), affd. 893 F.2d 656 (4th Cir. 1990).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the pertinent facts and circumstances, including the taxpayer's efforts to assess his or her

proper tax liability and the knowledge and experience of the taxpayer.  Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner makes no argument concerning respondent's determination under section 6662(a) except for his claim, which we have rejected, that he and Ms. Croteau did not intend that the terms of the agreement control the payments at issue.  Based on our examination of the entire record before us, we find that petitioner has failed to show that he acted with reasonable cause and in good faith, or that he otherwise exercised due care or made a reasonable attempt to comply with the Internal Revenue Code, when he claimed the alimony deduction at issue.  Accordingly, we sustain respondent's determination imposing the accuracy-related penalty under section 6662(a) for 1993.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.